UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM DEITRICK, JR.,

                Plaintiff,

- against -

CIBOLO CAPITAL PARTNERS I, LLC, and
TG LLC,

                Defendants.

**OPINION AND ORDER**

17 Civ. 04165 (ER)

Ramos, D.J.:

William Deitrick, Jr. brings this diversity action for breach of contract and tortious interference against Cibolo Capital Partners I, LLC ("Cibolo") and TG LLC ("TG") (collectively, "Defendants"). Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted based on principles of collateral estoppel and res judicata, or, alternatively, Federal Rule of Civil Procedure 12(b)(3) for improper venue.[1] *See* Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Complaint ("Defs' Mem.") (Doc. 14) at 1.

For the reasons stated below, Defendants' motion to dismiss is DENIED.

## I. Procedural Background

On December 1, 2015, Plaintiff brought an action in New York Supreme Court against these Defendants and the Gypsy Guitar Corporation ("Gypsy") seeking to recover monetary damages pursuant to an Engagement Letter. *See Deitrick v. The Gypsy Guitar Corp.*, 16 Civ. 616 (ER) (S.D.N.Y. Dec. 28, 2016) (*"Deitrick I"*). Defendants removed the action to the

---

[1] In the alternative, Defendants argue that this action should be transferred under 28 U.S.C. § 1406(a) for improper venue. Defendants assert that the proper venue for this action is the Northern District of Texas. Defs' Mem. at 16.

Southern District of New York on the basis of diversity jurisdiction on January 27, 2016. *See Deitrick I*, Notice of Removal, 16 Civ. 616 (Doc. 1) at 1. The *Deitrick I* Complaint alleged breach of contract, tortious interference, and unjust enrichment stemming from the same facts that are at issue here. *Deitrick I*, Complaint (Doc. 1-A) at 3–15. On March 11, 2016, Defendants Cibolo and TG[2] filed a motion to dismiss the *Deitrick I* Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. *See Deitrick I*, Defendants Cibolo and TG's Motion to Dismiss (Doc. 22). Gypsy filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 11, 2016. *See Deitrick I*, Defendant Gypsy's Motion to Dismiss (Doc. 40). On December 28, 2016, this Court granted Defendants Cibolo and TG's motion to dismiss without prejudice and denied Gypsy's motion to dismiss. *See Deitrick I*, Opinion and Order on Defendants' Motions to Dismiss ("Opinion and Order") (Doc. 59). Thereafter, on June 4, 2017, Plaintiff filed the instant Complaint against Defendants Cibolo and TG, which Defendants now move to dismiss. *See* Plaintiff's Complaint ("Complaint") (Doc. 1).

## II. **Factual Background**[3]

Gypsy, a Tennessee corporation in the business of crafting high-end designer guitars, hired Plaintiff, a New York resident, as its exclusive agent "in connection with a private placement, or other financing of, or asset or stock sale by, Gypsy." Complaint at ¶ 10. The parties executed a written agreement (the "Engagement Letter") on July 9, 2013, pursuant to which Plaintiff was entitled to reimbursement for all fees and expenses incurred and to receive a "Placement Fee"—both sums to be paid contemporaneously with the closing of the anticipated

---

[2] TG LLC was formed under the name Teye Guitars, LLC. The *Deitrick I* Complaint named Teye Guitars, LLC as a defendant.

[3] The following facts are drawn from allegations contained in the Complaint (Doc. 1), which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

transaction. *Id.* at ¶ 11. As an alternative to the Placement Fee, Gypsy agreed to pay Plaintiff a "Facilitation Fee," entitling Plaintiff to a percentage of both cash and the warrants of the total capital raised in any related transaction involving Gypsy and a client introduced by Plaintiff.[4] *Id.* at ¶ 12. A non-circumvention clause prohibited Gypsy from dealing directly with parties introduced to it by Plaintiff absent Plaintiff's written consent. *Id.* at ¶ 14. By its terms, the Engagement Letter automatically renewed for additional 12-month periods until Gypsy delivered written notice stating that the term would not be renewed. *Id.* at ¶ 15. Plaintiff claims that Gypsy has not provided him with written notice of its desire to terminate the agreement, and thus claims that the Engagement Letter is still in effect. *Id.*

Acting pursuant to the Engagement Letter, Plaintiff prepared an eighty-one page offering memorandum, financial models, and a due diligence folder. *Id.* at ¶ 16. Plaintiff also traveled extensively to meet with investors on behalf of Gypsy, including Cibolo, a private equity investor in Texas. *Id.* After Cibolo expressed interest in Gypsy, Plaintiff and Cibolo entered into a non-disclosure agreement ("NDA") to allow Cibolo to review Plaintiff's offering materials. *Id.* at ¶ 17. In pertinent part, the NDA, dated September 10, 2013, provided that Cibolo or any of its affiliates could not deal directly with Gypsy without Plaintiff's written consent. *Id.*

The NDA also contained a forum selection clause, which is of particular significance here:

> Any claim arising out of this Agreement or any transaction contemplated hereby shall be instituted in any state or federal court in the State of New York located in New York County, each party hereby irrevocably submits to the jurisdiction of such courts, and each party agrees not to assert, by way of motion, any defense or otherwise, in any such claim, that it is not subject personally to the jurisdiction of

---

[4] Plaintiff also contends that under Article 4(b) of the Engagement Letter, "any amount due to Plaintiff that is not paid within ten (10) days of written demand from Plaintiff shall bear interest, both before and after judgment, at the lesser of (i) 2% per month and (ii) the highest rate permitted by applicable law, until paid in full." *Id.* ¶ at 32.

such court, that the claim is brought in an inconvenient forum, that the venue of the claim is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

Declaration of Matthew J. Press ("Press Decl.") (Doc. 17), Ex. 3(b), Non-Disclosure Agreement (Doc. 17-7) at 4.

After the parties signed the NDA, Cibolo entered into due diligence discussions with Plaintiff and Gypsy regarding the investment. *Id.* at ¶ 18. Plaintiff alleges that sometime thereafter, Win Purifoy, a manager at Cibolo, instructed Gypsy to exclude Plaintiff from the negotiations. *Id.* at ¶ 19. Plaintiff claims that he was not informed of this instruction and that he did not consent to the communication between Gypsy and Cibolo, but that despite his repeated requests, Cibolo and Gypsy continued their discussions without involving him, thereby breaching Article 7 of the Engagement Letter and Section 5 of the NDA.[5] *Id.* at ¶ 20–21.

On October 10, 2013, Cibolo formed Cibolo Guitar Partners, which in turn, formed Teye Guitars, LLC, which later changed its name to TG. *Id.* at ¶ 22. Plaintiff alleges that Cibolo Guitar Partners is the sole member of TG, and Cibolo Guitar Partners and TG were formed with the intent to purchase Gypsy and evade their contractual obligations to Plaintiff. *Id.* at ¶ 22–23. On October 18, 2013, without Plaintiff's consent, Gypsy and TG executed an Asset Purchase Agreement (the "APA"), by which TG agreed to purchase the properties, rights, and assets used or useful in connection with Gypsy's design and construction of guitars. *Id.* at ¶ 24. Gypsy and TG also agreed to pay Plaintiff, at closing, a brokerage fee of $120,000 plus 2.2222% fully-diluted ownership in TG. *Id*. at ¶ 25.

That same day, on October 18, 2013, Gypsy and TG executed a promissory note & security agreement ("Promissory Note"), whereby TG lent $125,000 to Gypsy, its creative

---

[5] Plaintiff alleges that, prior to being excluded from negotiations, he expended $30,000 in expenses in connection with the transaction which were required to be reimbursed under the Engagement Letter. *Id.* at ¶ 31.

director, Teije Wijnterp, and CEO, Evert Wilbrink, to pay the obligations owed to Plaintiff and specific working capital needs. *Id.* at ¶ 26. Wilbrink also entered into a separate employment agreement (also on October 18) to become the chief operating officer and director of business development at TG. *Id.* at ¶ 27. On October 30, 2013, Cibolo investors, Sanjay Chandra and TAFLUMA Partners, L.P., executed a commercial loan agreement & promissory note ("Commercial Agreement") with TG in which they agreed to loan TG $800,000 to pay its obligations, including those TG assumed when it acquired the assets of Gypsy. *Id.* at ¶ 28. Plaintiff alleges that, under the Commercial Agreement, Gypsy's first obligation was to satisfy the amount owed to Plaintiff; however, Plaintiff has yet to receive such payments. *Id.* On April 1, 2014, Wijnterp signed an employment agreement to become the chief executive officer and chief creative director of TG. *Id.* at ¶ 29.

Approximately eight months later, on December 3, 2014, Plaintiff, through his attorneys, submitted a demand letter to Gypsy and TG seeking the money owed to him pursuant to the Engagement Letter. *Id.* at ¶ 33. On December 31, 2014, in response to the demand, Gypsy and TG entered into a settlement agreement,[6] providing, in pertinent part, that the parties never consummated the purchase transaction contemplated in the APA. *Id.* at ¶ 34. Moreover, Plaintiff alleges that the settlement agreement indicates that TG held legal title of Gypsy's property for approximately 14 months. *Id.* Plaintiff seeks compensatory damages for the amount owed to him under the Engagement Letter, including the Placement Fee, Facilitation Fee, business expenses, and interest. *Id.* at ¶ 35.

---

[6] The Settlement Agreement was entered into between Gypsy and TG for the purpose of "resolv[ing] all claims related to the course of dealing which took place during the failed Purchase Transaction, and resolve the outstanding debt." Press Decl., Ex. 6, Settlement Agreement (Doc. 17-17) at 1.

### III. Legal Standards

#### A. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Here, Defendants allege that the Complaint should be dismissed because it raises the same jurisdictional issues that were actually raised and decided in *Deitrick I*. *See* Defs' Mem. at 5. A 12(b)(6) motion "is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conompco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000); *see also Swiatkowski v. Citibank*, 745 F. Supp. 2d 150 (E.D.N.Y. 2010) (granting a 12(b)(6) motion to dismiss on grounds of collateral estoppel and res judicata). Moreover,

dismissal under 12(b)(6) is proper when the court has previously made a final jurisdictional determination. *Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982); *see also Romulus v. United States*, 983 F. Supp. 336, 343 (E.D.N.Y. 1997) ("[A] dismissal for lack of jurisdiction is preclusive as to the issue of jurisdiction."). A motion to dismiss premised on personal jurisdiction requires the court to construe all evidence in the light most favorable to the plaintiff. *DiStefano v. Carozzi N. America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

### B. Rule 12(b)(3) Motion to Dismiss

Under Rule 12(b)(3), a complaint may be dismissed for "improper venue." Fed. R. Civ. P. 12(b)(3). "The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)). To meet this burden, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction or venue. *Gulf Ins. Co.*, 417 F.3d at 355; *CutCo Indus. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986).[7] The court construes all of the plaintiff's allegations as true and resolves all doubts in its favor. *Casville*, 2013 WL 3465816, at *3 (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008); *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)).

---

[7] This is the standard when the Court addresses jurisdiction or venue on pleadings and affidavits. At an evidentiary hearing or trial, "the plaintiff must demonstrate [venue or jurisdiction] by a preponderance of the evidence." *Gulf Ins. Co.*, 417 F.3d at 355 (citing *CutCo Indus.*, 806 F.2d at 364-65).

## IV. Discussion

### A. Collateral Estoppel

Collateral estoppel—i.e. issue preclusion—bars the relitigating of issues that have previously been before the court, "thereby producing finality in judgments" and preserving judicial economy. *Beck v. Levering*, 947 F.2d 639, 642 (2d Cir. 1991); *see also Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (citing *United States v. Alcan Aluminum Corp.*, 90 F.2d 711, 718–19 (2d Cir. 1993)) ("The "fundamental notion" of the doctrine of collateral estoppel, or issue preclusion, 'is that an *issue of law or fact* actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'")

For the doctrine of collateral estoppel to apply, a four-part test must be satisfied: "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceedings must have been actually litigated and actually decided, (3) there must have been full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368–69 (2d Cir. 1995) (applying *Gelb's* four-part test). Moreover, collateral estoppel, as applied to personal jurisdiction, requires a "fact-sensitive analysis" to determine whether the complaint raises different causes of action based on additional facts that could not

have been discovered prior to the filing of the original complaint. *Barrett v. Tema Dev. (1988), Inc.*, 463 F. Supp. 2d 423, 428 (S.D.N.Y. 2006), *aff'd*, 251 F. App'x 698 (2d Cir. 2007).

### i. Identical Issues

Collateral estoppel will be invoked by the court when the issues in the related proceedings are identical. *Gelb*, 798 F.2d at 44. In the context of personal jurisdiction, collateral estoppel applies when a plaintiff files an action against the same defendant, arising from the same incident, in the same district, unless one of the following exceptions exist: "(1) subsequent events . . . create a new legal situation; (2) the plaintiff alleges new material facts that could not have been previously discovered in the exercise of due diligence; or (3) the second complaint alleges a new cause of action that provides a different basis for personal jurisdiction." *Moscato v. MDM Grp, Inc.*, No. 05 Civ. 10313 (KMW), 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008) (internal citations and quotations omitted). Consequently, the doctrine of collateral estoppel will support dismissal when a subsequent complaint attempts to provide a basis for personal jurisdiction by alleging facts and/or introducing evidence that could have been submitted in the previous action. *See id.*, at *4 (finding that evidence of an email dated prior to the commencement of the first action was not sufficient to establish personal jurisdiction in the second action).

Here, Plaintiff does not allege that either Defendants' contacts or relationship with the State of New York changed between the filing of the *Deitrick I* Complaint in 2015 and the subsequent filing of the instant Complaint, nor does Plaintiff allege new material facts that could not have previously been disclosed before the Court. Rather, Plaintiff asserts personal jurisdiction over the Defendants by alleging an additional cause of action that was not present in the first lawsuit—breach of the NDA. *See* Complaint at ¶ 36–53. Plaintiffs contend that through

executing the NDA, Defendants consented to personal jurisdiction in the Southern District of New York. Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") (Doc. 15) at 13. As articulated by multiple courts in this district, a subsequent cause of action will allow a plaintiff to assert jurisdiction over a previously dismissed defendant when the new cause of action provides a different basis for personal jurisdiction. *Moscato*, 2008 WL 2971674, at *2 (applying collateral estoppel when a subsequent complaint alleged "the same eight causes of action" and "virtually identical underlying facts"); *see also Barrett*, 463 F. Supp. 2d at 428 (finding the issues of personal jurisdiction were not identical when "the facts underlying [Plaintiff's] claim to jurisdiction . . . [were] substantially different from the facts upon which he argued for personal jurisdiction in the [first] action.").

Accordingly, because breach of the NDA is a new cause of action that provides a distinct basis of personal jurisdiction over both Defendants, Defendants cannot establish that the issues in both proceedings are identical. The Court now turns to the second factor in the collateral estoppel analysis to determine whether the issue of personal jurisdiction was "actually litigated and actually decided" in *Deitrick I*.

### ii. Actually Litigated and Decided

Because Defendants are unable to establish the first prong of the analysis, they perforce are unable to establish the second. Collateral estoppel is restricted to cases "where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Comm'r v. Sunnen*, 333 U.S. 591, 599–600 (1948)). To succeed on a collateral estoppel defense, the movant must show that an issue actually litigated in the prior proceeding was identical and decisive of the issue raised in

the second action. *See Ramos v. City of New York*, No. 15 Civ. 6085 (ER), 2017 WL 3267736, at *8 (S.D.N.Y. July 31, 2017) (citing *Buechel v. Bain*, 776 N.E.2d 914, 919 (N.Y. 2001)).

Although the Court did find personal jurisdiction lacking in *Deitrick I*, the NDA was not at issue in the previous decision and therefore, the Court did not analyze personal jurisdiction pursuant to its terms. Under a collateral estoppel analysis, "personal jurisdiction must be determined with respect to each claim asserted." *Barrett*, 463 F. Supp. 2d at 428 (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)). Accordingly, this Court finds that the determination of personal jurisdiction over these Defendants under the NDA has not been actually litigated and decided, therefore, Defendants also cannot meet this prong of the test. Collateral estoppel cannot be invoked.[8]

**B. <u>Res Judicata</u>**

For the same reason, res judicata also does not preclude the claims here. Res judicata— i.e. claim preclusion—prevents "a plaintiff from relitigating claims that were or could have been raised in a prior action against the same defendant where that action has reached a final judgment on the merits." *L-Tec Elec. Corp. v. Cougar Elec. Org. Inc.*, 198 F.3d 85, 87–88 (2d Cir. 1999). Defendants assert that Plaintiff's claims are barred by res judicata because Plaintiff was required to assert all bases for personal jurisdiction in the first action. *See* Defs' Mem. at 6. Although res judicata applies to "different legal theories . . . provided they arise from the same transaction or occurrence," this is such only when the court has previously issued a final judgment on the merits. *L-Tec Elec. Corp.*, 198 F.3d at 88. Moreover, "[i]t is well-established that a dismissal without prejudice has no res judicata effect on a subsequent claim." *Maurice Silvera, Inc. v. Nat'l Ctr. for Emp't of the Disabled*, No. 08 Civ. 6233 (LMM), 2003 WL 262508 (LMM), at *2

---

[8] Having found that the first two prongs are not met, the Court need not analyze the third or fourth prong.

11

(S.D.N.Y. Feb. 6, 2003) (citing *Camarano v. Irvin*, 98 F.3d 44, 47 (2d Cir. 1996)). Accordingly, res judicata does not bar Plaintiff's claims because the Court's prior dismissal without prejudice does not constitute a requisite final judgment on the merits.

### C. **Plaintiff Has Alleged Sufficient Facts to State a Claim for Tortious Interference and Breach of Contract Against TG and Cibolo**

#### i. **Tortious Interference**

Plaintiff alleges that TG and Cibolo tortuously interfered with the Engagement Letter executed by Plaintiff and Gypsy. *See* Complaint at 8. In order to establish a *prima facie* claim for tortious interference under New York law, the plaintiff must plausibly allege: (1) a valid contract exists between the plaintiff and a third party, (2) the defendant had knowledge of the contract, (3) the defendant intentionally breached the contract, and (4) the breach resulted in damages to the plaintiff. *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996) (citing *Israel v. Wood Dolson Co.*, 134 N.E.2d 97, 99–100 (N.Y. 1956)).

Here, Plaintiff asserts that the Engagement Letter constitutes a valid contract between Plaintiff and Gypsy. Complaint at ¶ 42. Plaintiff alleges that TG and Cibolo had knowledge of the contractual obligations under the Engagement Letter because Cibolo, and consequently TG, were introduced to Gypsy exclusively through their interactions with Plaintiff. *Id.* at ¶ 43. Further, the NDA provided that Cibolo was prohibited from communicating with Gypsy without Plaintiff's consent. *Id.* at ¶ 44. After executing the NDA, Cibolo formed TG for the purpose of negotiating directly with and purchasing Gypsy without Plaintiff's knowledge or consent. *Id.* at ¶ 46. Plaintiff asserts that Defendants' interference with Gypsy's obligations under the

Engagement Letter resulted in lost compensation that would have otherwise been owed to him under the terms of the Engagement Letter. *Id*. at ¶ 48.

Defendants contend that Plaintiff's allegations are conclusory and fail to specifically assert proper "but-for" causation between Defendants' conduct and the breach of the Engagement Letter. Defs' Mem at 12 (citing *Sharma v. Skaarup Ship Mgmt. Corp*., 916 F.2d 820, 828 (2d Cir. 1990)). Although, as Defendants point out, under *Sharma*, Plaintiff is required to plausibly allege but-for causation, the Complaint adequately does so. *See* Complaint at ¶ 45 (asserting that Cibolo intentionally contacted Gypsy after having knowledge of the prohibition contained in the Engagement Letter, thereby causing Gypsy to breach their contract). Moreover, Plaintiff's allegation that TG was created for the sole purpose of circumventing Plaintiff during Cibolo's negotiations with Gypsy depicts TG as a vehicle for interference. *Id*. at ¶ 45. Accepting all of the factual allegations as true, the Court finds that Plaintiff plausibly alleged the requisite elements of a claim for tortious interference against Defendants.[9]

Accordingly, Defendants' motion to dismiss the tortious inference claim is DENIED.

### ii. **Breach of Contract by Cibolo**

Plaintiff alleges that Cibolo breached the NDA by communicating directly with Gypsy without Plaintiff's consent. *Id*. at ¶ 37–38. Under New York law, to survive a motion to dismiss on a breach of contract claim, the plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant,

---

[9] In the *Deitrick I* opinion, the Court stated that "taking Plaintiff's allegations as true, Plaintiff has sufficiently alleged that he was injured as a result of Cibolo's interference with the Engagement Letter and that Cibolo should have reasonably expected that its actions would have consequences in New York." See *Deitrick I*, Opinion and Order at 14.

13

and (4) damages." *Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (citing *Balk v. N.Y. Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017) (summary opinion)).

The existence of the NDA, performance by the Plaintiff under the NDA, and damages are not the subjects of dispute between the parties. Rather, Defendants allege that Plaintiff has failed to set forth truthful allegations relating to Cibolo's breach of the NDA. Defs' Mem. at 10. Specifically, Defendants state that certain emails provided by Plaintiff contradict his assertions that Gypsy and Cibolo negotiated without his consent. *Id*. at ¶ 10–11 (relying on emails dated throughout 2013 and 2014 that were disclosed in the *Deitrick I* litigation). However, Defendants improperly rely on these emails, which may not be considered for purposes of this motion. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (holding that, on a motion to dismiss, the district court may consider documents attached to, incorporated into, and relied upon in the complaint); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)) ("A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") On the record presented, Plaintiff can in no way be deemed to have relied on the proffered emails.

Relying solely on the Complaint and documents referenced and relied upon therein,[10] the Court finds that Plaintiff plausibly alleges breach of contract against Cibolo. Plaintiff sets forth factual allegations that Cibolo breached the provision of the NDA prohibiting it from "deal[ing] directly with [any party introduced by Plaintiff] without the written consent of [Plaintiff]." Complaint at ¶ 37.[11] Whether Plaintiff is ultimately able to prove his assertions, is a question for

---

[10] Plaintiff did not attach any exhibits to the Complaint.

another day.

Accordingly, Defendants' motion to dismiss the breach of contract claim against Cibolo is DENIED.

### iii. <u>Breach of Contract by TG</u>

Plaintiff alleges that TG breached the Engagement Letter by failing to pay the Plaintiff after executing the APA, thereby assuming the obligations and liabilities of Gypsy. Complaint at ¶¶ 50–51. Defendants contend that the APA did not create a contractual obligation because the APA "explicitly states that no obligations or liabilities would be assumed by TG unless a closing actually occurred." Defs' Mem. at 9. While this assertion is supported by the language of the APA, the Complaint alleges that the settlement agreement was "concocted" by Gypsy and TG approximately three weeks after Plaintiff sent both entities a demand letter requesting the compensation he was owed under the terms of the Engagement Letter. Complaint at ¶¶ 33–34. The Complaint further asserts that TG held "legal title to and utilized" Gypsy property and equipment for 14 months prior to the execution of the settlement agreement. *Id.* Plaintiff claims that such possession of property indicates that the conditions of the APA requiring a "closing" prior to consummation were bypassed. *Id.*

Drawing all reasonable inferences in Plaintiff's favor, the Court finds that the allegations set forth in the Complaint regarding TG's breach of the Engagement Letter are plausible. Plaintiff's assertions, taken as true at this stage in the litigation, adequately plead that TG

---

[11] The language of the NDA explicitly states that "[Cibolo] or any of its owners of affiliates . . . will not deal with such Discloser Introduced Parties without the written consent of the Discloser." *See* Press Decl., Ex. 3, Non-Disclosure Agreement at 3.

undertook Gypsy's contractual obligations and subsequently failed to compensate Plaintiff for the fees owed to him.

Accordingly, Defendants' motion to dismiss the breach of contract claim against TG is DENIED.

### D. Venue Is Proper Under the Forum Selection Clause

Forum selection clauses are "*prima facie* valid" and should be enforced unless demonstrated to be "unreasonable" under the circumstances. *M/S Bremen et al. v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). Determination of whether to dismiss a claim under Rule 12(b)(3) based on a forum selection clause entails a four-part analysis. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007). First, the party seeking enforcement of the forum selection clause must demonstrate that: (1) the clause was "reasonably communicated to the party resisting enforcement;" (2) the clause was "mandatory and not merely permissive;" and (3) the claims and parties involved in the suit are subject to the clause. *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 376 (S.D.N.Y. 2010) (citing *Phillips*, 494 F.3d at 383–84). If these conditions are established, at the fourth step, it is the opposing party's burden to rebut the presumption of enforceability by "making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Phillips*, 494 F.3d at 383–84 (citing *Bremen*, 407 U.S. at 15).

Here, the Court finds no evidence on the record that the forum selection clause is unreasonable under the circumstances, thereby rendering it invalid. As determined above, the parties consented to personal jurisdiction in New York under the NDA. Furthermore, the clause is clearly mandatory, as it provides that all claims arising from the NDA "shall be instituted" in the courts of New York. *See* Press Decl., Ex. 3, Non-Disclosure Agreement at 4. The Court

finds that the forum selection clause is valid and enforceable, and venue is proper in the Southern District of New York.

Accordingly, Defendants' motion to dismiss for improper venue is DENIED.

## V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is DENIED. The parties are directed to appear for a conference on Wednesday, April 25, 2018 at 10:00 am. The Clerk of Court is respectfully directed to terminate the motion, Doc. 13.

SO ORDERED.

Dated:    March 28, 2018.
         New York, New York

                                                  Edgardo Ramos, U.S.D.J.